[803 NYS2d 139]

Martin Ragucci et al., Respondents, v Professional Construction Services et al., Defendants, and Maranga Architect & Associates, Inc., et al., Appellants.

Second Department, October 31, 2005

44

APPEARANCES OF COUNSEL

*L'Abbate, Balkan, Colavita & Contini, LLP*, Garden City (*Keith J. Stevens* and *Douglas R. Halstrom* of counsel), for appellants.

*Borchert, Genovesi, LaSpina & Landicino, P.C.*, Whitestone (*Anthony W. Vaughn, Jr.*, of counsel), for respondents.

## OPINION OF THE COURT

KRAUSMAN, J.

More than 20 years ago, the Legislature enacted General Business Law § 399-c, which prohibits the use of mandatory arbitration clauses in contracts for the sale or purchase of "consumer goods." We are now asked to examine the scope of General Business Law § 399-c, and determine whether it applies to a contract to provide architectural services in connection with the construction of a home. For the reasons which follow, we find that the parties' contract falls within the statute's broad definition of "consumer goods," and that the clause requiring the plaintiff homeowners to submit their dispute to arbitration is thus unenforceable. Accordingly, we affirm the order of the Supreme Court which denied the architect defendants' motion to stay all proceedings in this action insofar as asserted against them, and to compel arbitration.

In December 1999 the plaintiffs Martin Ragucci and Margaret Ragucci entered into a contract to purchase property on Royce Street in Brooklyn for the construction of a new home. The plaintiffs' daughter, Maureen, is severely disabled, and thus they intended their new home to be handicapped-accessible, with special features including an elevator which would enable Maureen to be transported from the basement-level garage to the upper floors. After purchasing the Royce Street property, the plaintiffs entered into a contract retaining the architectural firm of Maranga Architect & Associates to design and supervise the construction of their new home. The parties' contract, which was a standard form created by the American Institute of Architects, contained a compulsory arbitration clause requiring all claims or disputes "arising out of . . . this agreement" to be decided by arbitration unless the parties "mutually agree otherwise." The arbitration clause further specified that arbitration of potential disputes was to be conducted in accordance with the "Construction Industry Arbitration Rules of the American Arbitration Association." In addition, the arbitration clause provided that "[t]he award rendered by the arbitrator or

arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

During the construction of their new home, the plaintiffs became dissatisfied both with the work being performed by their general contractor, and the services being provided by the architectural firm of Maranga Architect & Associates. The plaintiffs ultimately fired their general contractor and hired other contractors to complete the work. The plaintiffs claim that before firing their general contractor, they repeatedly asked the architectural firm to send an employee to the premises to monitor construction. According to the plaintiffs, the firm did not do so until January 18, 2001, and by that date there allegedly were numerous inconsistencies between the construction performed and the architectural drawings, which could have been avoided by proper monitoring. The plaintiffs also allege that the architectural firm "unilaterally" terminated the parties' contract on April 8, 2002.

About one year later, the plaintiffs commenced this action against several parties, including the general contractor they had fired, the architectural firm of Maranga Architect & Associates, and the firm's principal, Gary Maranga (hereinafter the architect defendants). The complaint alleged, inter alia, that the architect defendants committed malpractice by designing the home with an inclined driveway too steep to allow Maureen's customized van to be driven into the garage, or to safely accommodate her wheelchair. The complaint further charged that the architect defendants breached the parties' contract by refusing to send an employee to monitor construction of the premises, and by failing to notify the New York City Department of Buildings of "As-Built" revisions to the architectural plans. The complaint additionally alleged that the architect defendants engaged in deceptive trade practices in violation of General Business Law § 349, the Deceptive Trade Practices Act.

Shortly after the commencement of the action, the architect defendants moved pursuant to CPLR 2201 and 7503 to stay all proceedings in the action insofar as asserted against them, and to compel arbitration. In support of the motion, the architect defendants pointed out that their services were performed in accordance with a written contract which contained an arbitration clause. The architect defendants thus submitted that arbitration was the forum which the parties had agreed to use in the event of a dispute arising out of the performance of the contract.

In opposition to the motion, the plaintiffs argued that enforcement of the arbitration clause contained in the parties' contract was barred by General Business Law § 399-c, which prohibits mandatory arbitration clauses in contracts for the sale or purchase of consumer goods. In support of their position, the plaintiffs contended that the subject contract for architectural services fell within the scope of the statute because General Business Law § 399-c (1) (b) defines the term "consumer goods" to include "services purchased or paid for by a consumer, the intended use or benefit of which is intended for the personal, family or household purposes of such consumer." In reply, the architect defendants submitted that General Business Law § 399-c was inapplicable because the subject contract called for the provision of professional services in connection with the construction of a house, and not merely for the purchase of consumer goods. `

The Supreme Court denied the architect defendants' motion, holding that the services they provided in connection with the construction of the plaintiffs' home fell within the ambit of the statute's definition of "consumer goods." On appeal, the architect defendants continue to maintain that General Business Law § 399-c does not apply because the subject contract for architectural services cannot be considered a contract for the sale or purchase of consumer goods as contemplated by the statute.

At issue on appeal is the scope of General Business Law § 399-c. This statute, which became effective on September 5, 1984, was "designed to prevent sales contracts from including clauses pre-committing consumers to arbitrate disputes rather than resort to Small Claims suits, refusal to pay for defective goods, or other remedies" (Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 399-c, at 771). In urging the enactment of section 399-c, the New York State Consumer Protection Board noted that while arbitration can sometimes provide a "quick, inexpensive and simple resolution" to disputes between consumers and sellers, no contract "should deprive a consumer of the right to take the dispute further and seek judicial redress" (Mem of State Consumer Protection Board, Bill Jacket, L 1984, ch 946, at 9). Similarly, in a memorandum submitted in connection with the enactment of General Business Law § 399-c, Assemblyman Jose E. Serrano stated that "[c]onsumers should have the advantage of having contract disputes handled by the judicial system *or* by an arbitrator," as

well as "the ability to choose between arbitration or judicial resolution of their disputes after the time when a dispute arises" (Mem in Support of L 1984, ch 946, 1984 NY Legis Ann, at 325).

Before beginning our analysis of whether the services provided by the architect defendants in this case fall within the ambit of General Business Law § 399-c, we note that there are cases which have recognized or upheld the enforceability of arbitration clauses in contracts for architectural services (*see Matter of Anagnostopoulos v Union Turnpike Mgt. Corp.*, 300 AD2d 393 [2002]; *Ambassador Constr. Co. v 40 Wall St. Dev. Assoc.*, 264 AD2d 317 [1999]; *Matter of Chapnick v Cohen*, 203 AD2d 362 [1994]). However, it appears that General Business Law § 399-c was not raised as a bar to the enforceability of the arbitration clauses at issue in those cases, and thus those cases are not dispositive of the issue raised on this appeal.

Although General Business Law § 399-c was enacted over 20 years ago, there are no reported cases analyzing its provisions. Thus, this Court is now called upon to construe its intended scope. The starting point of our analysis must be with the plain meaning of the statutory language (*see Bluebird Partners v First Fid. Bank*, 97 NY2d 456, 460-461 [2002]; *Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95, 104 [2001]), since it is the statutory text which is the "clearest indicator of legislative intent" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). Thus, we begin by examining the language of General Business Law § 399-c. The first subdivision of the statute sets forth definitions of its relevant terms. General Business Law § 399-c (1) (c) provides that the term "consumer" shall mean "a natural person residing in this state." General Business Law § 399-c (1) (b) defines the term "consumer goods" to mean "goods, wares, paid merchandise or services purchased or paid for by a consumer, the intended use or benefit of which is intended for the personal, family or household purposes of such consumer." General Business Law § 399-c (1) (c) also defines the term "mandatory arbitration clause" as a provision "in a written contract for the sale or purchase of consumer goods which requires the parties to such contract to submit any controversy thereafter arising under such contract to arbitration prior to the commencement of any legal action . . . and which also further provides language to the effect that the decision of the arbitrator or panel of arbitrators in its application to the consumer party shall be final and not subject to court review."

After defining these relevant terms, General Business Law § 399-c (2) continues by prohibiting any written contract for the sale or purchase of consumer goods, to which a consumer is a party, from containing a mandatory arbitration clause. The subdivision further provides that any such mandatory arbitration clause shall be null and void.

Here, it is undisputed that the plaintiff homeowners are "consumers" as defined by the statute, and that the subject contract, which requires binding arbitration of all disputes, contains a "mandatory arbitration clause." Thus, the crux of this appeal is whether an agreement for the provision of architectural services in the design and construction of a home can be considered a contract for the sale or purchase of "consumer goods" as that term is defined by the statute. Although a contract for the professional services of an architect may not appear, at first blush, to be a contract for the sale or purchase of "consumer goods," as that phrase is commonly understood, the statute broadly defines consumer goods to include "services purchased or paid for by a consumer, the intended use or benefit of which is intended for the personal, family or household purposes of such consumer" (General Business Law § 399-c [1] [b]). No distinction is made between professional services and those provided by nonprofessionals. Here, the architect defendants unquestionably provided "services" to the plaintiffs in connection with the construction of a handicapped-accessible residence, and these services were clearly for the plaintiffs' personal and family use. Where, as here, the language of a statute is clear and unambiguous, the statute should be construed so as to give effect to the plain meaning of the words (*see People ex rel. Harris v Sullivan,* 74 NY2d 305, 309 [1989]). Given the breadth of the statute's definition of "consumer goods," basic rules of statutory interpretation compel the conclusion that the subject contract is a contract for the purchase of consumer goods, which falls within the scope of General Business Law § 399-c.

In support of their position that General Business Law § 399-c does not apply to the subject contract, the architect defendants contend that Uniform Commercial Code § 2-105 defines the term "[g]oods" as "all things . . . which are movable at the time of identification to the contract for sale" (*see also* Black's Law Dictionary 714 [8th ed 2004]). Since a house cannot be considered a moveable item of personal property, the architect defendants submit that the contract for their services was not a

contract for the purchase or sale of consumer goods. However, as we have discussed, General Business Law § 399-c contains its own definition of the term "consumer goods," which includes "services." Since principles of statutory construction require that we give "meaning and effect . . . to *all* language of a statute" (*Cohen v Lord, Day & Lord,* 75 NY2d 95, 100 [1989] [emphasis added]; *see Rosner v Metropolitan Prop. & Liab. Ins. Co.,* 96 NY2d 475, 479 [2001]), we must reject the architect defendants' position because it fails to take into account the full language of the statute's definition of "consumer goods."

We also find no merit to the architect defendants' argument that the statute's inclusion of the term "household purposes," in its definition of "consumer goods" demonstrates that services performed in connection with the construction of a home fall outside the scope of General Business Law § 399-c. In this regard, the defendants submit that the statute would obviously not have included the term "household purposes" if it was intended to be construed to include houses or other real property. However, this argument isolates the term "household purposes," and disregards the full definition of "consumer goods," which includes "services purchased or paid for by a consumer, the intended use or benefit of which is intended for the *personal, family or household purposes* of such consumer" (General Business Law § 399-c (1) (b) [emphasis added]). While architectural services performed in connection with the construction of a home cannot be considered services intended for "household purposes," as we have noted, such services can be reasonably viewed as intended to benefit the consumer's personal or family purposes.

Furthermore, while the legislative history underlying the enactment of General Business Law § 399-c does not indicate that the legislature expressly considered the issue of whether professional services such as those provided by an architect should be included within the definition of "consumer goods," there is also no indication of a contrary intent. The statute was enacted, in part, to address abuses uncovered by Federal Trade Commission inquiries in the 1970s, which disclosed that "precommitment clauses were often not understood by customers, who then faced the need to pay significant filing fees under some clauses, and could be forced to attend hearings at inconvenient times and places or forfeit their claims. In certain instances, industry groups financed programs and arranged for selection of industry experts as the arbitrators, a practice often

useful in commercial arbitration where both participants in the dispute are members of the same segment of an industry or a balanced panel is provided, but one-sided in consumer-merchant disputes" (Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 399-c, at 773). The Federal Trade Commission's inquiries also found that "[a]buses, particularly rife in the home improvement industry, gave truly voluntary business-consumer arbitration a bad name, and thus led to wide support for corrective action" (*id*).

The conclusion that General Business Law § 399-c applies to the subject contract is not inconsistent with this legislative history. A residential property owner seeking the services of an architect for the construction or renovation of a house is not on equal footing in bargaining over contractual terms such as the manner in which a potential future dispute should be resolved. Indeed, the plaintiffs in this case played no role in drafting the subject form agreement. Moreover, a residential property owner may be at a disadvantage where the chosen forum for arbitration specializes in the resolution of disputes between members of the construction industry. While the situation at bar may not have been expressly contemplated by the legislature in enacting General Business Law § 399-c, extending the protection of the statute to residential property owners in these circumstances would be in keeping with its intended purposes. Accordingly, the order should be affirmed.

FLORIO, J.P., COZIER and FISHER, JJ., concur.

Ordered that the order is affirmed, with costs.