OPINION OF THE COURT
Edward W. McCarty, III, J.
*628 Petition brought by order to show cause for a judgment staying two arbitrations demanded by respondent, and cross motion by respondent for an order imposing sanctions against petitioners pursuant to 22 NYCRR part 130, are decided as set forth herein.
On June 11, 2004, petitioners entered into a construction management agreement with respondent Kean Development Company, Inc., in which Kean agreed to manage and direct the renovation of petitioners’ residence in Lloyd Harbor. On August 18, 2004, petitioners and Kean entered into a second construction management agreement in which Kean agreed to manage and direct the renovation of petitioners’ apartment in Manhattan.
Paragraph 26 of each of the construction management agreements provides that
“[a]ny disagreement, dispute, controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. Venue shall be in Nassau County.”
In December 2004, petitioners terminated Kean from both renovation projects. Kean sent petitioners several invoices, some of which remain unpaid. Kean claims petitioners owe it $801,386.47 for the Lloyd Harbor home renovation and $171,093.54 for the Manhattan apartment renovation.
On or about November 10, 2005, Kean served petitioners with a demand for arbitration and notice of intention to arbitrate for each of the renovation projects. On or about December 23, 2005, petitioners served and filed answering statements to each of the respondent’s two demands for arbitration, and moved for joint trial of both arbitrations. That motion has yet to be decided by the arbitrator.
By order to show cause dated February 3, 2006, petitioners sought and received a temporary stay of the arbitrations. Petitioners seek a permanent stay of the arbitrations on the ground that the mandatory arbitration clauses contained in the construction management agreements are null and void, pursuant to General Business Law § 399-c.
At the outset, it should be noted that petitioners’ application for a stay of arbitration is untimely, pursuant to CPLR 7503 (c), *629 which provides, in relevant part, that “[a]n application to stay arbitration must be made by the party served within twenty days after service upon him of the notice or demand, or he shall be so precluded.”
Petitioners admit receipt of Kean’s two demands for arbitration and notices of intention to arbitrate on or about November 11, 2005, yet they failed to make application to stay the arbitrations until their order to show cause was brought on February 3, 2006.
While petitioners’ application for a stay of the arbitrations is admittedly untimely, “an untimely application to stay arbitration may be granted if the agreement for which arbitration is sought is facially illegal or if upon facial examination of the agreement, a court may conclude that it would be against public policy to permit arbitration of the issue sought to be arbitrated.” (Matter of Land of the Free v Unique Sanitation, 93 NY2d 942, 943 [1999].)
Petitioners argue that the arbitration clauses contained in the construction management agreements are null and void pursuant to General Business Law § 399-c and therefore the untimeliness of their application to stay the arbitrations should not be a bar due to the public policy issue involved.
The court therefore turns to an analysis of General Business Law § 399-c and its applicability to the facts herein. General Business Law § 399-c (2) (a) provides, in relevant part, that “[n]o written contract for the sale or purchase of consumer goods, entered into on or after the effective date of this section [Sept. 5, 1984], to which a consumer is a party, shall contain a mandatory arbitration clause.” General Business Law § 399-c (2) (b) further provides that “[t]he provisions of a mandatory arbitration clause shall be null and void.”
There was no reported case law whatsoever regarding the interpretation of General Business Law § 399-c until the recent decision of the Appellate Division, Second Department, in Ragucci v Professional Constr. Servs. (25 AD3d 43 [2005]). In that case, the Appellate Division held that section 399-c was applicable to an agreement for the provision of architectural services in connection with the construction of a home, and the Court declined to compel arbitration pursuant to the terms of a mandatory arbitration clause contained in the parties’ agreement.
Since the Appellate Division, Second Department, in Ragucci (supra) found General Business Law § 399-c barred enforce *630 ment of a mandatory arbitration clause in an agreement between residential property owners and an architect, it would seem that the mandatory arbitration clause in the agreements between petitioner homeowners and respondent construction manager herein would be similarly unenforceable. However, respondent argues that in the case at bar, General Business Law § 399-c is preempted by the Federal Arbitration Act.
There is no reported New York case law to date addressing this preemption argument. It was not raised as an issue before the Appellate Division, Second Department, in Ragucci (supra). Therefore, this would appear to be a case of first impression in New York.
Section 2 of the Federal Arbitration Act (9 USC § 2) makes enforceable a written arbitration provision in “a contract evidencing a transaction involving commerce.” In order for the Federal Arbitration Act to apply, the transaction at issue must “involve commerce.” The United States Supreme Court has defined that term to be the functional equivalent of “affects commerce.” (See, Allied-Bruce Terminix Cos. v Dobson, 513 US 265 [1995].)
In Allied-Bruce Terminix Cos. v Dobson (supra), the Supreme Court reversed the judgment of the Supreme Court of Alabama, which denied a motion to compel arbitration pursuant to the parties’ termite treatment agreement. In applying the Federal Arbitration Act in preemption of state law, the Supreme Court found that the agreement “affected commerce,” noting the multistate nature of Terminix and Allied-Bruce and the materials used by Allied-Bruce to treat the Dobson’s home. Moreover, the Supreme Court noted in its decision that the parties did not contest that the transaction at issue involved interstate commerce.
The Court of Appeals in Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp. (4 NY3d 247 [2005]), recently addressed the issue of the applicability of the Federal Arbitration Act to a construction contract performed in New York, which contained a mandatory arbitration provision. In that case, the Court of Appeals concluded that the project “affected interstate commerce” triggering application of the Federal Arbitration Act. (Id. at 252.) Among the factors cited by the Court were the following: the project manual and engineer’s drawings were created in a joint effort with a structural engineering firm headquartered in Illinois; petitioner’s largest supplier of materials for the project was a New Jersey company; *631 project meetings and visits were often scheduled at the New Jersey supplier’s offices; the largest supplier of equipment for the project was a Massachusetts company; and further, additional materials, equipment and services for the project were obtained from Oklahoma, Maryland and Kansas.
Respondent Kean argues that its agreements to renovate petitioners’ Lloyd Harbor house and Manhattan apartment “affect commerce” because certain materials used during the course of the home improvements came from out of state. This hardly rises to the level of “affecting commerce” set forth by the United States Supreme Court in Allied-Bruce (supra) or the New York Court of Appeals in Matter of Diamond (supra). If the use of any out-of-state materials triggers the applicability of the Federal Arbitration Act, then General Business Law § 399-c would be eviscerated and preempted in most cases. Taking respondent’s reasoning to its logical extreme, any contract for consumer goods, involving any goods from outside of New York, would not receive the intended protection of General Business Law § 399-c.
Respondent Kean attempts to bolster its argument that its agreements with petitioners affect interstate commerce by submitting a copy of a Web page for “Team Kean,” which includes respondent Kean Development Co., and lists a Florida phone number, as well as a New York phone number. This isolated Web page, with a Florida phone number, which petitioners point out is for a residence, is unavailing in adding further interstate contacts herein.
The holding of the Appellate Division, Second Department, in Ragucci (supra), makes it clear that General Business Law § 399-c, barring mandatory arbitration clauses, is applicable herein. While the Federal Arbitration Act may in some cases preempt a state statute such as section 399-c, it may only do so in transactions “affecting commerce.” The agreements herein, when measured against the standards set by applicable case law, cannot be said to “affect commerce.” To hold otherwise, would render General Business Law § 399-c a virtual nullity.
Since this court has found General Business Law § 399-c to be applicable herein, and since section 399-c deems such mandatory arbitration provisions null and void, public policy is implicated and the untimeliness of petitioners’ application does not bar this court from addressing their petition. (See, Matter of Land of the Free, supra.)
Respondent’s argument that General Business Law § 399-c should not be deemed to apply herein because of the education *632 and background of the petitioners is unpersuasive. The consumer protection afforded by General Business Law § 399-c is not to be limited by the sophistication of the particular consumer, but available to all consumers regardless of background.
Petitioners’ application to stay the arbitrations is hereby granted. Respondent Kean’s cross motion for sanctions is denied.