[908 NYS2d 401]

New York Telephone Company, Plaintiff, v Supervisor of Town of North Hempstead et al., Defendants/Third-Party Plaintiffs-Appellants. County of Nassau et al., Third-Party Defendants-Respondents.

Second Department, August 3, 2010

### APPEARANCES OF COUNSEL

*Jaspan Schlesinger LLP*, Garden City (*Maureen T. Liccione, Stanley A. Camhi, Steven R. Schlesinger, Andrew M. Mahony, John C. Farrell* and *Chris J. Coschignano* of counsel), for defendants/third-party plaintiffs-appellants and for Glenwood-Glen Head Garbage District and another, amici curiae.

*John Ciampoli, County Attorney*, Mineola (*Peter J. Clines, Joseph DeMaro, Conal B. Denion, Gil Nahmias* and *Carl A. Laske* of counsel), for third-party defendants-respondents.

*Cullen and Dykman LLP*, Garden City (*Peter J. Mastaglio, Robert J. Sorge, Jr., Karen I. Levin, Jennifer A. McLaughlin* and *Hayley M. Kelch* of counsel), for plaintiff and amicus curiae.

*Ingerman Smith, LLP*, and *Guercio and Giercio, LLP*, Farmingdale (*Raymond G. Keenan* of counsel), for Nassau-Suffolk School Boards Association, amicus curiae (one brief filed).

### OPINION OF THE COURT

RIVERA, J.P.

On the instant appeal, we consider whether Nassau County Administrative Code § 6-26.0 (b) (3) (c) (L 1939, chs 272, 701-709, as amended), known as the "County Guaranty," requires the County of Nassau, the Assessor of the County of Nassau (hereinafter the Assessor), and the Nassau County Board of Assessors (hereinafter the BOA), rather than the Town of North Hempstead and several special districts located in the Town, to refund certain special ad valorem levies judicially determined to be invalidly imposed upon the plaintiff's real property. The "County Guaranty" is a special law that expressly survives sev-

eral amendments to the Real Property Tax Law where erroneous tax assessments have been made. We conclude that the "County Guaranty" applies to the judicially directed refunds of the subject levies. Accordingly, we reverse the order appealed from, and grant the motion of the Town and the special districts for summary judgment on the first cause of action in the third-party complaint seeking indemnification from, among others, the County, the Assessor, and the BOA.

I. Factual and Procedural Background

## A. The Five Initial Actions

Verizon New York, Inc. (hereinafter Verizon), formerly known as New York Telephone Company, owns "mass property" within the Town of North Hempstead. This "mass property" is comprised of, inter alia, telephone lines, wires, cables, poles, and supports and enclosures for electrical conductors. The named defendants include the Town, as well as special garbage districts within the Town (hereinafter collectively the Town).

In 1998 Verizon commenced the instant action against the Town challenging the imposition of special ad valorem levies relating to garbage and refuse collection services for its mass property. Specifically, Verizon alleged that the imposition of special ad valorem levies for garbage and refuse collection services was illegal. In this regard, Verizon asserted that Real Property Tax Law § 102 (14) provides, in relevant part, that a "special ad valorem levy" may only be "imposed upon benefitted real property" and, since the subject mass property neither required nor received any garbage or refuse collection services, there was no benefit derived therefrom. Accordingly, Verizon sought refunds of the levies it paid in connection with those properties, a judgment declaring that the imposition of the levies was invalid, and injunctive relief.

Verizon moved, inter alia, for partial summary judgment declaring that the imposition of the levies was illegal and void, enjoining the continued imposition of such levies, directing a refund in the sum of $559,991.55 plus interest for the tax years 1994-2002, and directing that the calculation of damages for the levies it paid for the tax years 1992 and 1993 be determined at a trial. In an order dated November 12, 2003, the Supreme Court granted the motion. On appeal, this Court affirmed that order (*see New York Tel. Co. v Supervisor of Town of N. Hempstead*, 19 AD3d 465 [2005]). This Court concluded that the Supreme Court correctly determined that the special ad valorem levies

for garbage and refuse collection services imposed were "invalid because the properties did not and could not receive any direct benefit from that service" (*id.* at 466).

Thereafter, following a nonjury trial on the issue of damages for the 1992 and 1993 tax years, judgment was entered in favor of Verizon and against the Town in various amounts. The Town appealed from the judgment and this Court is affirming that judgment (*see New York Tel. Co. v Supervisor of Town of N. Hempstead*, 76 AD3d 517 [2010] [decided herewith]).

## B. The Third-Party Action

In December 2005 the Town commenced a third-party action against, among others, the County of Nassau, the Assessor, and the BOA (hereinafter collectively the County), seeking, inter alia, indemnification. As relevant to the instant appeal, in the first cause of action in the third-party complaint, the Town alleged, among other things, that pursuant to Nassau County Administrative Code § 6-26.0, the County is required to refund any tax or benefit assessment that is declared to be illegal or erroneous.

The Town moved for summary judgment on the first cause of action in the third-party complaint. In support of its motion, the Town asserted that the County was the "assessing unit," and was responsible for all errors and illegalities in the assessment roll. Relying upon Nassau County Administrative Code § 6-24.0 (4), which, as discussed in detail infra, pertains to property that has been "assessed erroneously or illegally," the Town claimed that the County was obligated to refund the levies. Additionally, the Town asserted that the County Guaranty provides that such refunds are to be a "county charge."

In opposition, the County asserted that the County Guaranty did not apply in the third-party action, and that the refunds sought by Verizon were *not* a county charge. The County accused the Town of "misreading" the "relevant statutory provisions" and "misunderstanding" the "underlying statutory scheme." Among other things, the County claimed that Nassau County Administrative Code § 6-24.0 referred only to the "administrative procedure for the correction of errors" and not "refunds arising from judicial proceedings such as the case at bar." Additionally, the County argued that Nassau County Administrative Code § 6-24.0 was "no longer . . . an operative section of the administrative code" since it had been "super-

seded by subsequently enacted general law Title 3 of Article 5 of the RPTL." The County insisted that the Town was the party "ultimately responsible" for the refund generated in this action.

The Supreme Court denied the Town's motion, and, upon searching the record, awarded summary judgment to the County dismissing the third-party complaint (2008 NY Slip Op 33608[U]). The Supreme Court determined that the County Guaranty was inapplicable, and that RPTL 726 (1) (b) governed the instant dispute. We disagree and reverse.

II. Relevant Statutory Scheme

In order to resolve the issues presented on this appeal, we must first analyze the interplay of different statutory provisions and the statutory history of the County Guaranty.

## A. History of the Guaranty

Prior to 1938, the Nassau County Tax Act (L 1916, ch 541) provided that town boards of assessors were obligated to prepare the local assessment rolls. Refunds of illegally imposed taxes were charged to the towns (see Letter from G. Burchard Smith to Charles D. Breitel, Mar. 8, 1948, Bill Jacket, L 1948, ch 851). In 1938 the offices of town assessor were abolished and their powers and duties transferred to the BOA (see Nassau County Charter §§ 608, 609). The BOA became responsible for assessment of all properties in the County (see Nassau County Charter §§ 602, 609).

In 1939 the State Legislature enacted the Nassau County Administrative Code (hereinafter NCAC), as a codification and restatement of the existing law with relation to the administration of County affairs (L 1939, ch 272).

In 1948 the NCAC was amended to provide that, since the County now assessed all property, tax refunds due to illegal or erroneous assessments would be made a County charge (see Letter from G. Burchard Smith to Charles D. Breitel, Mar. 8, 1948, Bill Jacket, L 1948, ch 851).

As part of the amendment, NCAC § 6-26.0 (b) (3) (c) was added, providing for the County Guaranty, with the following language:

> "Notwithstanding any provisions of this chapter, or any other general or special law to the contrary, any deficiency existing or hereafter arising from a decrease in an assessment or tax under subdivisions

one, four and seven of section 6-24.0, or sections 6-12.0 or 5-72.0 of the code, or by reason of exemptions or reductions of assessments shall be a county charge."

Subdivision (4) of NCAC § 6-24.0 provides as follows:

"§ 6-24.0 Correction of errors in assessment rolls. Upon the verified petition to the Board of Supervisors by a majority of the Board of Assessors: . . .

"4. That any property subject to taxation has been assessed erroneously or illegally, for either the County assessment roll or for the school district assessment roll, the Board of Supervisors shall cancel on such roll such assessment and the tax or assessment for benefit on such property."

In a related act, the Legislature amended the Nassau County Charter to provide that "deficiencies existing or hereafter arising from the extension of taxes for the adopted budgets shall be a county charge" (Nassau County Charter § 607, as amended by L 1948, ch 98). The Bill Jacket for this amendment indicated that the new provision was meant to cover discrepancies between town budgets and the amount of taxes collected that arise primarily due to computation rounding errors (*see* Bill Jacket, L 1948, ch 98).

### B. RPTL article 7 Tax Certiorari Proceedings

In 1949 the Legislature amended article 13 of the Tax Law (now codified in RPTL article 7) to provide a streamlined procedure for proceedings to review real property tax assessments (*see* L 1949, ch 551). A report of the Judicial Council stated that Tax Law former article 13 applied generally throughout the state, but special provisions of city charters, administrative codes, or special statutes differing from Tax Law former article 13 were to control (15th Ann Rep of Jud Council of State of NY, at 321-322). "Therefore, it is proposed to amend the procedural provisions of Article 13 of the Tax Law generally, but to permit local provisions, if any, to prevail as to matters of detail, as is the law at present" (*id.* at 322). In other words, the NCAC and the County Guaranty contained therein were neither affected nor abrogated by this new legislation.

In 1958 the Legislature created the Real Property Tax Law (*see* RPTL 1608, as added by L 1958, ch 959, renum RPTL 2008 by L 1973, ch 39, § 2). RPTL 726 provides that refunds obtained

in tax certiorari proceedings are to be charged back to the city, town, or special district which received the taxes (*see* RPTL 726 [1] [a], [b]). However, the 1958 legislation also specified:

> "This chapter shall not be deemed to repeal or otherwise affect the provisions of any special or local law or ordinance or of any county, city or village charter, or other special form of government, it being the intention of the legislature that the same shall continue in full force and effect until and unless otherwise duly amended, repealed or affected" (RPTL 2006 [formerly RPTL 1606, as added by L 1958, ch 959]).

An opinion of the State Comptroller dated July 30, 1971, stated that refunds from tax certiorari proceedings were governed by RPTL 726 (27 Ops St Comp No. 266 [1971] [unreported]). In 1979 the Comptroller superseded that opinion, stating that he believed that it was incorrect, and that tax certiorari refunds were a County charge pursuant to the County Guaranty (1979 Ops St Comp No. 79-597 [unreported]).

## C. RPTL, article 5, title 3

In 1974 the Legislature added title 3 of article 5 of the RPTL, which provides an administrative procedure for the correction of certain errors on assessment and tax rolls (L 1974, ch 177). New definitions of "clerical" errors and "unlawful" entries replaced vague terms such as "erroneous" or "illegal" assessments (7 Ops Counsel SBEA No. 29 [1975]). The definitions of those errors deemed to be correctable were "meant to limit the subject matter to errors which go to jurisdiction, transcription or computation" (Mem of Dept of Audit and Control, at 3, Bill Jacket, L 1974, ch 177). The prohibition against administrative corrections due to disputed errors in judgment as to valuation was continued (*id.*).

The RPTL amendment further provided:

> "The amount of any tax refunded or credited pursuant to this section shall be a charge upon each municipal corporation or special district to the extent of any such municipal corporation or special district taxes that were so refunded. Amounts so charged to cities, towns and special districts shall be included in the next ensuing tax levy" (RPTL 556 [6] [a]).

The Bill Jacket referable to the RPTL amendment explains that the statutory scheme "would have application to all munic-

ipal corporations except the City of New York" (Letter from Thomas F. McGrath to Michael T. Whiteman, Apr. 5, 1974, Bill Jacket, L 1974, ch 177).

The Legislature also provided for the primacy of correction of errors procedures under RPTL, article 5, title 3 by adding RPTL 559 (2), which provides: "Provisions of all general, special, local or other laws which are inconsistent with the provisions of this title shall be inapplicable to municipal corporations to which this title applies but if not inconsistent shall apply to such municipal corporation."

In 1975 a bill was introduced to amend RPTL 559 to exempt the County, but the bill was vetoed (Veto Jacket, Veto 22 of 1976 [1976 NY Assembly Bill A4601-A]). The memorandum in support of the bill stated that the bill was seen as necessary since RPTL, article 5, title 3 supersedes the correction of errors procedure of the NCAC, and RPTL 556 imposes a charge-back on special districts (Veto Jacket, Veto 22 of 1976). The County supported the bill, noting that RPTL, article 5, title 3 provides for a charge-back of refunds to towns, and a departure from the County Guaranty "would prove to be both an administrative and financial nightmare to many of the smaller school districts and special districts in the County" (Letter of James M. Catterson, Jr., to Judah Gribetz, June 7, 1976, Veto Jacket, Veto 22 of 1976; see Letter of Thomas L. Carroll to John B. Connorton, Jr., June 21, 1976, Veto Jacket, Veto 22 of 1976; Letter of Abe Seldin to Judah Gribetz, June 3, 1976, Veto Jacket, Veto 22 of 1976 [noting direct conflict with NCAC § 6-26.0]).

Counsel for the State Board of Equalization and Assessment (hereinafter SBEA) stated that the correction provisions of the NCAC had "[u]nquestionably" been superseded by RPTL, article 5, title 3, but urged disapproval of the bill (Letter of Thomas F. McGrath to Judah Gribetz, June 11, 1976, Veto Jacket, Veto 22 of 1976). The Governor vetoed the legislation, finding that the uniform procedures should apply to the County (Veto Message, Veto Jacket, Veto 22 of 1976).

Evidently, there was confusion and a lack of consensus regarding the meaning and implications of the RPTL, article 5, title 3 amendments as they related to the continued viability or applicability of the County Guaranty. For instance, an opinion from the County Attorney to the County Treasurer dated September 8, 1975, stated that RPTL, article 5, title 3 superseded NCAC §§ 6-24.0, 6-25.0 and 6-26.0 (see 1975 Ops County Atty 611). Another opinion of the County Attorney dated July

27, 1976, came to the same conclusion (*see* 1976 Ops County Atty 355). Significantly, notwithstanding the foregoing, the County continued to pay refunds without charge-back pursuant to the NCAC. By 1979, County and State officials expressed a "drift" or "redirection," and opined that the County Guaranty barred charge-backs to the towns for refunds (Letter of Francis T. Purcell to Edward V. Regan, Aug. 17, 1979, 1979 Ops St Comp No. 79-597).

More recent actions by the Legislature evince an understanding that the County Guaranty remains effective. In 1996 the Legislature amended provisions of RPTL article 7 to change the status of school districts from necessary parties in tax certiorari proceedings to intervenors (L 1996, ch 503). The sponsor of the bill that became Laws of 1996 (ch 503) noted that "Nassau and Suffolk school districts have been exempted from the intervenor status provisions altogether since school districts in these counties are not responsible for tax certiorari awards" (Letter from Joseph R. Holland to Michael C. Finnegan, July 17, 1996, Bill Jacket, L 1996, ch 503). Moreover, as explained by the New York State Office of Real Property Services, historically, petitions were not required to be served on Nassau or Suffolk school districts "because in these counties, the school districts do not pay tax certiorari refunds" (Mem from Stanley Jones to Richard Sinnott, July 11, 1996, Bill Jacket, L 1996, ch 503).

In 2000 the Legislature created the Nassau County Interim Finance Authority (hereinafter the Authority), and empowered it to issue bonds to address certain financial difficulties faced by the County (*see* L 2000, ch 84, as amended). The County concedes that the Authority was created in large part to assist the County with the burden of borrowing to pay property tax refunds.

In 2002 the Legislature reformed the process of property tax grievances in Nassau County (*see* L 2002, chs 401, 402). A letter from the Comptroller noted that the County must refund all successfully challenged property taxes that had been levied, including those collected by school districts, towns, and villages (*see* Letter from State Comptroller, Bill Jacket, L 2002, ch 401).

III. Analysis

### Clarification/Application of the Statutory
### Framework/Connecting the Dots to Resolve the Quandary

The starting point of analysis must be the plain meaning of the statutory language, since it is the statutory text which is

" 'the clearest indicator of legislative intent' " (*Ragucci v Professional Constr. Servs.*, 25 AD3d 43, 47 [2005], quoting *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]; *see Janssen v Incorporated Vil. of Rockville Ctr.*, 59 AD3d 15, 28 [2008]).

> "Where the language of the statute is clear and unambiguous, the intent of the framers is to be first sought in the words and language employed, and, if the words plainly and clearly express the sense of the framers, resort need not be had to other means of interpretation" (McKinney's Cons Laws of NY, Book 1, Statutes § 76, Comment; *see Eaton v New York City Conciliation & Appeals Bd.*, 56 NY2d 340, 345 [1982]).

"When the plain language of the statute is precise and unambiguous, it is determinative" (*Matter of Washington Post Co. v New York State Ins. Dept.*, 61 NY2d 557, 565 [1984]).

As eloquently stated by the Court of Appeals,

> "[a]s we proceed to resolve the issue[s] before us, we recognize that there is cogency and anomaly in [the parties'] positions, and that our role in matters of statutory interpretation is to implement the will of the Legislature as we see it, knowing that the Legislature has the last word as to what it intended" (*Chianese v Meier*, 98 NY2d 270, 276 [2002]).

We conclude that the relevant statutes have clear and unambiguous language, and that the intent of the Legislature also is unequivocal. Moreover, the interplay of the statutes is quite straightforward.

At the outset, pursuant to RPTL 559 (2), the procedures for administrative corrections of errors, as articulated in the NCAC, are superseded by RPTL, article 5, title 3 *only* insofar as they are *inconsistent* with RPTL title 3 (*see* NCAC §§ 6-24.0, 6-25.0, 6-26.0; *Atria Assoc. v County of Nassau*, 181 AD2d 847, 851 [1992]; *Saggolf Corp. v Town Bd. of Town of Bolton*, 63 AD2d 428, 432 [1978]). Therefore, contrary to the Town's contention, administrative petitions may no longer be entertained by the County for the correction of "erroneous" or "illegal" assessments which do not fall within the limited range of errors which may be *administratively* corrected pursuant to RPTL, article 5, title 3 (NCAC § 6-24.0 [4]; *see* RPTL 550 [2], [3], [7]; *cf. Matter of Level 3 Communications, LLC v DeBellis*, 72 AD3d 164, 176 [2010]).

Further, based upon our reading of the statutes, we find that the County Guaranty is inconsistent with RPTL 556 (6) (a) and, therefore, has been partially superseded relative *only* to refunds obtained through the correction-of-errors procedure of RPTL, article 5, title 3. However, contrary to the County's contention, the County Guaranty was not *completely* superseded by the 1974 amendment to RPTL, article 5, title 3. By its clear and unambiguous terms, the County Guaranty is not limited to deficiencies arising from an administrative correction of assessments or taxes. Instead, it applies to and is inclusive of deficiencies arising "by reason of exemption or reductions of assessments" (NCAC § 6-26.0 [b] [3] [c]). Accordingly, the County Guaranty has been applied to refunds of taxes obtained in judicial proceedings pursuant to RPTL article 7 and declaratory judgment actions (*see Matter of Steel Los III/Goya Foods, Inc. v Board of Assessors of County of Nassau*, 10 NY3d 445 [2008]; *Matter of Bowery Sav. Bank v Board of Assessors of County of Nassau*, 80 NY2d 961 [1992]).

Refunds obtained in tax certiorari proceedings are usually governed by RPTL 726 (1), which provides that the amount of such refunds are to be charged back to the city, town, or special district which received the taxes. However, in contrast to the primacy afforded to the RPTL, article 5, title 3 uniform-correction-of-errors procedures, the Legislature provided that provisions of special laws shall take precedence over other provisions of the RPTL. RPTL 2006 (added as RPTL1606 by L 1958, ch 959) states:

> "This chapter shall not be deemed to repeal or otherwise affect the provisions of any special or local law or ordinance or of any county, city or village charter, or other special form of government, it being the intention of the legislature that the same shall continue in full force and effect until and unless otherwise duly amended, repealed or affected."

The intent to retain the applicability of special laws, such as the County Guaranty, for tax certiorari proceedings is consistent with the legislative history of the enactment of the predecessor to RPTL article 7, Tax Law article 13 (*see* L 1949, ch 551), and with later actions taken by the Legislature (*see* L 1996, ch 503).

Accordingly, RPTL 726 (1) does not apply to the County, and judicially directed refunds of taxes or levies illegally imposed due to an error other than those administratively correctable

pursuant to RPTL, article 5, title 3 are governed by the County Guaranty (*see* NCAC § 6-26.0 [b] [3] [c]; RPTL 2006; *Matter of Steel Los III/Goya Foods, Inc. v Board of Assessors of County of Nassau*, 10 NY3d 445 [2008]; *Matter of Bowery Sav. Bank v Board of Assessors of County of Nassau*, 80 NY2d 961 [1992]; *Saggolf Corp. v Town Bd. of Town of Bolton*, 63 AD2d 428 [1978]).

IV. Conclusion

In this declaratory judgment action, Verizon was awarded judgment against the Town for the refund of illegally imposed special ad valorem levies. The illegality was not administratively correctable pursuant to RPTL, article 5, title 3 and, thus, the County Guaranty remains applicable. Consequently, the Supreme Court should have granted the Town's motion for summary judgment on the first cause of action in the third-party complaint for indemnification against the County pursuant to the County Guaranty.

The Town's remaining contention is not properly before this Court (*see generally DeNaro v Rosalia*, 59 AD3d 584, 587 [2009]; *cf. Bergstol v Town of Monroe*, 305 AD2d 348, 349 [2003]).

The order is reversed, on the law, and the motion of the defendants/third-party plaintiffs for summary judgment on the first cause of action in the third-party complaint against the County is granted.

FLORIO, MILLER and HALL, JJ., concur.

Ordered that the order is reversed, on the law, with costs, and the motion of the defendants/third-party plaintiffs for summary judgment on the first cause of action in the third-party complaint is granted.