[992 NYS2d 247]

In the Matter of BETTER WORLD REAL ESTATE GROUP, Appellant, v NEW YORK CITY DEPARTMENT OF FINANCE et al., Respondents.

Second Department, August 13, 2014

**APPEARANCES OF COUNSEL**

*Schroder & Strom, LLP*, Mineola (*Michael J. Scarpa* of counsel), for appellant.

*Zachary W. Carter, Corporation Counsel*, New York City (*Vincent D'Orazio*, *Steven Tishco* and *Brooke Zacker* of counsel), for respondents.

## OPINION OF THE COURT

LEVENTHAL, J.

In January 2008, while the petitioner was in the midst of building a new two-family house and garage on its property in Queens, the New York City Department of Finance (hereinafter the DOF) classified the property as a three-family house with one store or office. As a result of this apparently mistaken classification, the petitioner's property tax bill increased more than $50,000 for the tax year 2008/2009. Although the proper method for challenging an excessive real property tax assessment is ordinarily the commencement of a tax certiorari proceeding pursuant to Real Property Tax Law article 7, Administrative Code of the City of New York § 11-206 provides taxpayers with an alternative administrative method for seeking correction of a limited class of errors that result in overassessments. This provision authorizes the DOF to correct a real property tax assessment that is based upon a clerical error or an error in description. The primary issues raised on this appeal are whether the petitioner's claim that the DOF mistakenly classified its property for the tax year 2008/2009 constituted a clerical error or an error in description within the scope of Administrative Code § 11-206, and whether the petitioner's challenge to the DOF's determination refusing to correct the assessment for the tax year 2008/2009 is time-barred. We hold that the alleged mistaken classification of the petitioner's property constituted a clerical error or error in description and, thus, the petitioner has stated a valid cause of action to review the DOF's determination that is not time-barred.

The property at issue on this appeal is located in Jamaica, Queens. When the petitioner, Better World Real Estate Group, purchased the property in 2003, it was improved with a one-family house and frame garage. The petitioner obtained a permit to demolish the existing structures in 2005, and in February 2006 the petitioner began construction of a new two-family house and garage.

During the tax year 2007/2008, the subject property was classified as Class 1B, V0, which applies to properties improved with a one-to-three-family residential structure. The subject property had an estimated market value of $153,000 during the tax year 2007/2008, and the assessment ratio for Class 1 properties at that time was 6% of full market value. Construction of the new two-family house and garage was not completed until November 2008.

Meanwhile, in January 2008, while the construction was still in progress, the DOF reclassified the property for the tax year 2008/2009 as Class 2A, Building Code: "S3"; "Description: primarily three family with one store or office." Class 2 properties are defined as all other residential properties which are not designated as Class 1, save for hotels, motels, and other similar commercial property (*see* RPTL 1802 [1]). The assessment ratio for Class 2 property at the time was 45% of full market value. The relevant "Notice of Property Value" for the tax year 2008/2009, dated January 15, 2008, stated that the property consisted of four units, "3 Residential, 1 Non-Residential." The "Notice of Property Value" further stated that, although the property had a full market value of $1,497,000, the real property tax was actually based on an adjusted value of $1,197,566, and that the property had a taxable value of $538,905, or 45% of $1,197,566. According to the petitioner, as a result of the DOF's error in the subject property's classification, its 2008/2009 tax bill increased from approximately $8,300 to more than $60,000.

In January 2009, without any action by the petitioner, the DOF reclassified the subject property for the tax year 2009/2010 as a Class 1, 2-family residential property. The "Notice of Property Value" stated that the property had a full market value of $810,000 and a taxable value of $48,600. The DOF did not, however, correct the classification for the tax year 2008/2009, nor did the DOF cancel any of the taxes due on the subject property for that tax year.

In a letter dated March 17, 2011, the petitioner informed the DOF that it was seeking "a reclassification of the [subject] parcel for the 2008/2009 tax year and classification of the 2008/2009 tax arrears levied against the parcel which represent excess and illegal taxes billed as a result of misclassification of the parcel." The petitioner explained that the subject property was never improved with a three-unit residence with a single commercial structure. The petitioner stated that, while the DOF correctly classified the subject property for the tax year 2009/2010, the DOF "failed to retroactively correct the misclassification on the 2008/09 tax assessment by correction of error as provided by § 11-206 of the New York City [Code] and cancel the excess taxes and interest on the unpaid taxes." The petitioner argued that the 2008/2009 tax levy was a "windfall" to the City which could not be justified "under any method of assessment or legal theory."

In a letter dated March 24, 2011, the DOF, in effect, denied the petitioner's request to correct the allegedly mistaken clas-

sification of the subject property for the 2008/2009 tax year, taking the position that it was not a clerical error that could be corrected pursuant to Administrative Code § 11-206:

> "Your letter requests that the [DOF] reduce the market and assessed values of this property for the fiscal year 2008/2009. The [DOF] has limited authority to change the values on prior assessment rolls. The authority is limited to clerical errors pursuant to Administrative Code § 11-206. 'Clerical error' is limited to transcription errors and errors in arithmetic and mathematics. The [DOF] is *not authorized* to act when the property owner maintains that the property is overvalued. Such issues are resolved upon review by the Tax Commissioner and/or the courts.

> "Consequently, [the DOF] will not take action on the property's assessment of building valuation for the 2008/2009 tax year" (emphasis added).

On July 13, 2011, the petitioner commenced the instant proceeding pursuant to CPLR article 78, primarily seeking to review the determination of the DOF, in effect, denying its application pursuant to Administrative Code § 11-206 to correct an error of description with respect to the subject property on the 2008/2009 final assessment roll, to reduce the assessed value of the property for the tax year 2008/2009, and to issue a revised 2008/2009 tax bill in accordance with those changes. The petition alleges, inter alia, that the DOF erroneously described the subject property during the tax year 2008/2009, that the DOF's erroneous assessment for that tax year should be corrected pursuant to Administrative Code § 11-206, and that the Supreme Court should correct the DOF's error in the interest of justice.

Prior to interposing an answer (*see* CPLR 7804 [f]), the DOF and the City of New York (hereinafter together the respondents) moved pursuant to CPLR 3211 (a) (5) and (7) to dismiss the petition on the grounds that it failed to state a cause of action and was time-barred. In support of their position that the petition failed to state a cause of action, the respondents argued that claims of property misclassification and overassessment could only be reviewed in a RPTL article 7 proceeding, not by way of a proceeding seeking a correction pursuant to Administrative Code § 11-206. Accordingly, the respondents maintained that RPTL article 7 provided the petitioner's exclusive remedy for the relief sought. In the alternative, the respondents contended

that, even had the petitioner commenced a proceeding pursuant to RPTL article 7, the petitioner failed to file, as a condition precedent, an application for correction of an assessment with the Tax Commission by March 1 of the tax year for which the assessment was to be reviewed (*see* NY City Charter § 163 [f]; 1 RCNY 37-01).

The respondents also noted that the petitioner did not seek to challenge the 2008/2009 assessment of the subject property until more than three years after the final assessment was recorded. The respondents then argued that the instant proceeding was time-barred because the 2008/2009 tax assessment became final on May 25, 2008 (*see* NY City Charter § 165), and the proceeding was not commenced until July 13, 2011. Lastly, the respondents argued that, even if a CPLR article 78 proceeding was the appropriate method for seeking reclassification of the subject property and the proceeding was not time-barred, any reclassification could not be applied retroactively.

In an order and judgment dated December 29, 2011, the Supreme Court granted the respondents' motion, and dismissed the proceeding. The Supreme Court agreed with the respondents' contention that RPTL article 7 was the petitioner's exclusive remedy. Additionally, the Supreme Court held that the CPLR article 78 proceeding was time-barred because it was commenced more than three years after the tax assessment became final. The petitioner appeals.

On appeal, the petitioner argues that the Supreme Court erred in granting the respondents' motion to dismiss the petition because the DOF committed a clerical error in the physical description of the subject property, which resulted in an erroneous tax classification and tax bill. The petitioner maintains that such an error is correctable under Administrative Code § 11-206. The petitioner further argues that a CPLR article 78 proceeding is an appropriate vehicle for reviewing the DOF's refusal to correct the error.

The respondents counter that the petitioner's exclusive vehicle for challenging the subject tax assessment was a tax certiorari proceeding pursuant to RPTL article 7. Although the respondents recognize that the DOF has the power to correct "clerical errors," they assert that the error that occurred in the instant case was not clerical. In any event, the respondents argue that even if a CPLR article 78 proceeding was the proper vehicle for the petitioner's challenge to the classification and tax assessment, the challenge was also time-barred. In this

regard, they continue to maintain that the tax assessment was deemed final on May 25, 2008, and that the petitioner had until four months after that date to commence a CPLR article 78 proceeding.

According to section 153 (b) of the New York City Charter, the Tax Commission "shall be charged with the duty of reviewing and correcting all assessments of real property" in the City of New York (*see* Administrative Code of City of NY § 11-201 ["The commissioner of finance shall be charged generally with the duty and responsibility of assessing all real property subject to taxation within the city"]; *see also* NY City Charter § 1506). Generally, the proper method for challenging an allegedly excessive or unlawful real property tax assessment is by the commencement of a tax certiorari proceeding pursuant to RPTL article 7 (*see* RPTL 706; *Kahal Bnei Emunim & Talmud Torah Bnei Simon Israel v Town of Fallsburg,* 78 NY2d 194, 204 [1991]; *Matter of Sterling Estates v Board of Assessors of County of Nassau,* 66 NY2d 122 [1985]; *Matter of Woodland Estates, LLC v Soules,* 79 AD3d 942, 943 [2010]; *Matter of St. Francis Hosp. v Taber,* 76 AD3d 635, 638 [2010]; *Matter of Level 3 Communications, LLC v DeBellis,* 72 AD3d 164, 173 [2010]; *Matter of Young v Town of Bedford,* 37 AD3d 729 [2007]; *Matter of Cathedral Fourth Dev. Corp. v Board of Assessors & Assessment Review Commn. of County of Nassau,* 25 AD3d 693 [2006]; *Matter of General Elec. Co. v MacIsaac,* 292 AD2d 689 [2002]; *Matter of G.A.D. Holding Co. v City of N.Y. Dept. of Fin., Real Prop. Assessment Bur.,* 192 AD2d 441, 442 [1993]; *Matter of Krugman v Board of Assessors of Vil. of Atl. Beach,* 141 AD2d 175 [1988]). The respondents argue that because RPTL 701 (5) (a) defines "misclassification" as "an entry on an assessment roll of an incorrect class designation," and the New York City Charter defines misclassified property as "an entry on an assessment roll of an incorrect class designation" (NY City Charter § 163 [a] [3] [a]), the petitioner's exclusive method for challenging an allegedly erroneous tax assessment was by way of a proceeding pursuant to RPTL article 7. Accordingly, the respondents assert that the petition was properly dismissed for failure to state a cause of action.

If the respondents are correct in their assertion that the petitioner's *sole* method of challenging the subject tax assessment was a tax certiorari proceeding pursuant to RPTL article 7, then the motion was properly granted and the proceeding properly dismissed (*see Matter of Sterling Estates v Board of As-*

*sessors of County of Nassau,* 66 NY2d at 126). In this regard, there is no evidence in the record that the petitioner made a timely application to the Tax Commission to correct the assessment, which is a condition precedent for the commencement of an RPTL article 7 proceeding (*see* NY City Charter § 163 [f] [the filing of a application for correction of a tax assessment "shall be prerequisite to the review of a final determination of the tax commission"]; *see also* RPTL 706 [2]; *Matter of Aymes v Tax Commn. of the City of N.Y.,* 95 AD3d 567 [2012]; *Matter of Jankolovits v Tax Commn. of City of N.Y.,* 274 AD2d 395, 396 [2000]). Moreover, a proceeding pursuant to RPTL article 7 to review a determination by the Tax Commission must be commenced before October 25 in the year after the determination was made (*see* NY City Charter §§ 165, 166).

Nevertheless, RPTL 700 itself makes clear that a tax certiorari proceeding is not a taxpayer's exclusive remedy for seeking review of an excessive assessment. In this regard, RPTL 700 provides that "[a] proceeding to review an assessment of real property shall be brought as provided in this article *unless otherwise provided by law*" (RPTL 700 [1] [emphasis added]; *see Matter of Foundation for Chapel of Sacred Mirrors, Ltd. v Harkins,* 98 AD3d 1044, 1045 [2012]).

As an example of a case in which a taxpayer utilized a CPLR article 78 proceeding to seek review of a tax assessment in lieu of commencing a tax certiorari proceeding, the petitioner cites to *Matter of Coliseum Towers Assoc. v Livingston* (153 AD2d 683 [1989], *affd sub nom. Matter of Bowery Sav. Bank v Board of Assessors of County of Nassau,* 80 NY2d 961 [1992]). In that case, certain taxpayers submitted applications to the Nassau County Department of Assessment requesting correction of the 1985/1986 final assessment roll, the issuance of corrected tax bills for that tax year, and, in some instances, tax refunds. The taxpayers thereafter commenced a CPLR article 78 proceeding, inter alia, to compel the County to act on their applications pursuant to article 5 of the RPTL, which sets forth the procedure for the correction of assessment errors in connection with the taxation of real property outside of the City of New York. On appeal, this Court held that an error in eliminating the taxpayers' business investment exemption was a clerical error which came "within the ambit of errors subject to correction under [article 5 of] the RPTL" (*id.* at 685). Therefore, this Court reinstated those branches of the taxpayer's CPLR article 78 petition which sought to compel correction of a tax assessment

roll and the issuance of corrected tax bills (*see Matter of Level 3 Communications, LLC v DeBellis,* 72 AD3d at 173-174 [in municipalities in which RPTL article 5 is applicable, challenges to the denial of an application to correct errors in assessment may be asserted pursuant to CPLR 7803]).

In support of its contention that a CPLR article 78 proceeding is an appropriate vehicle by which to challenge the subject tax assessment, the petitioner relies upon Administrative Code § 11-206, which is entitled "Power of the commissioner of finance to correct errors." This provision states as follows:

"The commissioner of finance may correct any assessment or tax which is erroneous due to a clerical error or to an error of description contained in the several books of annual record of assessed valuations, or in the assessments-rolls. If the taxes computed on such erroneous assessment have been paid, the commissioner of finance is authorized to refund or credit the difference between the taxes computed on the erroneous and corrected assessments" (Administrative Code § 11-206).

On its face, Administrative Code § 11-206 vests the Commissioner of the DOF with the discretion to correct any tax assessments that are erroneous due to a clerical error or to an error of description. As the Administrative Code does not define the terms "clerical error" or "error of description," these terms must be given their ordinary meaning.

When a statute is ambiguous and requires interpretation, the construction given to the statute by an administrative agency responsible for its administration should be upheld by the courts (*see Matter of Robins v Blaney,* 59 NY2d 393, 399 [1983]), unless the agency's interpretation is irrational, unreasonable, or inconsistent with the governing statute (*see Matter of Toys "R" Us v Silva,* 89 NY2d 411, 418-419 [1996]). However, when a " 'question is one of pure legal interpretation of statutory terms, deference to the [agency] is not required' " (*Matter of Raritan Dev. Corp. v Silva,* 91 NY2d 98, 102 [1997], quoting *Matter of Toys "R" Us v Silva,* 89 NY2d at 419). In such instances, courts should construe clear and unambiguous statutory language as to give effect to the plain meaning of the words used (*see Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y.,* 91 NY2d 413, 419 [1998]; *Matter of Raritan Dev. Corp. v Silva,* 91 NY2d at 106-107; *Matter of Brown v New York State Racing & Wagering Bd.,* 60 AD3d 107, 115 [2009]).

Generally, a clerical error is an error resulting from a minor mistake or inadvertence, such as in writing or copying something on the record, rather than an error in reasoning or judgment (*see* Black's Law Dictionary [9th ed 2009], clerical error; *see generally Matter of Tagliaferri v Weiler*, 1 NY3d 605, 606 [2004] [holding that, pursuant to CPLR 2001, the Appellate Division should have disregarded the "clerical error" in a notice of appeal which indicated that a law firm, rather than its clients, were appealing]).

■ The merits of this proceeding are dependent upon whether, during the tax year 2008/2009, the property consisted of two units or four units, and, as a result, should have been classified tax Class 1 or tax Class 2. On a motion to dismiss a pleading pursuant to CPLR 3211 (a) (7), the factual allegations in the pleading must be deemed true, and the petitioner must be afforded the benefit of every favorable inference (*see Matter of Oddone v Suffolk County Police Dept.*, 96 AD3d 758, 760 [2012]; *Matter of Kar-McVeigh, LLC v Zoning Bd. of Appeals of Town of Riverhead*, 93 AD3d 799, 800 [2012]). Applying that standard here, we must assume that the property was indeed improved with a two-family house still in the process of construction during the 2008/2009 tax year, as the petitioner alleges, and was mistakenly classified as a three-family house with a nonresidential unit. Giving the petitioner the benefit of every favorable inference, the alleged error could have simply been the result of an error in reciting the number of units. Since such an error can be viewed as clerical in nature, the petition states a valid cause of action seeking the correction of that error pursuant to Administrative Code § 11-206.

The petition also sufficiently states a cause of action to correct an error of description of the property pursuant to Administrative Code § 11-206. An error of description generally refers to circumstances where a given description of real property is so vague or indefinite that it is impossible to ascertain how far the property boundaries extend, where the property is located, and whether the property belongs to the owner (*see Town of Brookhaven v Dinos*, 76 AD2d 555, 562 [1980], *affd* 54 NY2d 911 [1981]; *People ex rel. Upstate Tel. Corp. of N.Y. v Hanson*, 185 Misc 396, 398 [Sup Ct, Fulton County 1945] ["The primary purpose of a description of property in an assessment roll apparently is to permit an interested party to identify it or to inform him (or her) as to where and how he (or she) may find a more complete description"]; *see generally Peterson v Martino*,

210 NY 412, 420 [1914] ["the description of the land, both in the assessment roll and in the county treasurer's deed, is so vague and indefinite that the property as there described is not capable of being identified as the land belonging to the plaintiffs . . . It might as well have been a deed without any description whatever"]; CPLR 6511 [b] [requiring a notice of pendency to include, among other things, "a description of the property affected"]). However, this is not the exclusive definition of what constitutes an error of description (*cf. Matter of Donald E. Axinn Cos. v Board of Assessors of County of Nassau*, 85 NY2d 838 [1995] [in a proceeding pursuant to RPTL art 5, a tax assessor conceded that taxpayer's real property was erroneously described as four acres, rather than one acre]).

The petitioner does not dispute that the 2008/2009 final assessment roll correctly described the property according to its address and block and lot number. That assessment, however, described the property as having three residential units and a single nonresidential unit. Since all final assessment rolls must include a separate column for the entry of the class designation (*see* RPTL 1802 [2]), and the 2009/2010 final assessment of the subject property described the property as Class 1 residential property, consisting of only two residential units, the error alleged in the petition also constituted "an error of description" contained in the assessment rolls that may be corrected pursuant to section 11-206 of the Administrative Code.

Thus, the petition states a cause of action because it avers that the DOF committed a clerical error and an error of description with respect to the subject property, that pursuant to Administrative Code § 11-206, the DOF has the discretion to correct the clerical error and error in description, change the description of the property, redesignate the property, and issue a revised assessment, and that the DOF's denial of the application was arbitrary and capricious and affected by an error of law. More specifically, the petitioner alleges that the DOF's denial of its application pursuant to Administrative Code § 11-206 was arbitrary and capricious, as the DOF clearly made an error in assessing the subject property as anything but a Class 1, two-family home for the tax year 2008/2009, and that the DOF misinterpreted the petitioner's application.

We note that RPTL article 5, title 3, sets forth a parallel procedure for the correction of certain types of errors in the assessment of real property taxes imposed outside of the City of New York (*see* RPTL 550, 554, 556 [taxpayer can apply for a refund

or correction of an assessment roll on the ground that there is a "clerical error," an "error in essential fact," or an "unlawful entry"]; *New York Tel. Co. v Supervisor of Town of N. Hempstead*, 77 AD3d 121, 127 [2010]). Although RPTL article 5 does not apply to real property taxation in New York City (*see* RPTL 559 [3]), the provisions set forth therein are illustrative. For example, in *Matter of Donald E. Axinn Cos. v Board of Assessors of County of Nassau* (85 NY2d 838 [1995]), the Court of Appeals held that a taxpayer established its entitlement to a reduced tax assessment pursuant to RPTL article 5 where the subject one-acre parcel was erroneously described as four acres. The taxing authority subsequently corrected the acreage error, but left the total assessment unchanged. The evidence demonstrated that the acreage error affected the calculation of the assessment and tax owed. The petitioner here similarly alleges that the DOF committed an error in describing the subject property as being improved by three residential units with one nonresidential unit, requiring an S3 building description, and improperly classified the subject property as tax Class 2. According to the petitioner, the mistaken description of the number of units on the property led to a tax misclassification, which, in turn, resulted in an improper assessment of the tax owed.

We also note that acceptance of the respondents' view that RPTL article 7 is the sole vehicle for challenging a real property tax assessment would render Administrative Code § 11-206 superfluous and meaningless. Such a result would be inconsistent with the rule that courts must, where possible, give effect to every word of a statute (*see Toys "R" Us v Silva*, 89 NY2d at 422; *Matter of Bliss v Bliss*, 66 NY2d 382, 388-389 [1985]). Therefore, we reject the respondents' contention. Hence, RPTL article 7 is not the only method by which the petitioner could challenge the assessment of the subject property, where the erroneous assessment arose from an alleged clerical error or an error in description. Our determination in this regard is generally supported by the "view that the law regarding real property assessment proceedings is 'remedial in character and should be liberally construed to the end that the taxpayer's right to have his assessment reviewed should not be defeated by a technicality' " (*Matter of Garth v Board of Assessment Review for Town of Richmond*, 13 NY3d 176, 180 [2009], quoting *Matter of Great E. Mall v Condon*, 36 NY2d 544, 548 [1975]). Indeed, the ultimate goal of property valuation in any tax proceeding

"is to arrive at a fair and realistic value of the property involved" (*Matter of Great Atl. & Pac. Tea Co. v Kiernan*, 42 NY2d 236, 242 [1977]) so that "all property owners contribute equitably to the public fisc" (*Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351, 356 [1992]). Moreover, we note that in the various cases cited by the respondents in support of their contention that RPTL article 7 is the sole vehicle for the relief that the petitioner seeks, the taxpayers in those cases did not rely upon Administrative Code § 11-206.

■ Addressing the issue of timeliness, a CPLR article 78 proceeding such as the one involved here must be commenced within four months after the subject determination (*see* CPLR 217; *see also Matter of Level 3 Communications, LLC v DeBellis*, 72 AD3d at 175). When a party seeks to review an administrative determination, the statute of limitations begins to run from the date that the determination became final and binding upon that party (*see* CPLR 217 [1]; *Walton v New York State Dept. of Correctional Servs.*, 8 NY3d 186, 194 [2007]; *Matter of Edmead v McGuire*, 67 NY2d 714, 716 [1986]). An administrative determination becomes "final and binding" when (1) the administrative agency reached a definitive position on the issue that inflicts actual, concrete injury; and (2) the injury inflicted may not be "significantly ameliorated by further administrative action or by steps available to the complaining party" (*Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y.*, 5 NY3d 30, 34 [2005]; *see Walton v New York State Dept. of Correctional Servs.*, 8 NY3d at 195).

In the letter dated March 24, 2011, the DOF advised the petitioner that its authority to change the values on prior assessment rolls was "limited to clerical errors pursuant to Administrative Code § 11-206." The DOF added that clerical errors were limited to transcription errors, and arithmetic or mathematical errors. Furthermore, the DOF stated that it was not authorized to act when a taxpayer maintains that its property was overvalued, and that such issues were to be resolved upon review by the Tax Commissioner or the courts. The DOF notified the petitioner that it would "not take action" on the petitioner's request for a correction of the assessment on the subject property for the tax year 2008/2009 pursuant to Administrative Code § 11-206. The letter made it clear that the DOF had reached a definitive position regarding the 2008/2009 tax assessment of the subject property. That determination inflicted an actual, concrete injury which left the petitioner only

with the choice of accepting the DOF's position or commencing a legal proceeding. Thus, the DOF's determination was final and binding upon the petitioner on March 24, 2011, and this CPLR article 78 proceeding, commenced on July 13, 2011, was timely.

We note that Administrative Code § 11-206 articulates no administrative procedures with which a taxpayer must comply as a condition to seeking the correction of an error (*cf. Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978]). To the extent that the respondents contend that Administrative Code § 11-206 be construed as having a limitations period, any such limitations period must be crafted by the New York City Council, not the judiciary (*cf.* RPTL 556 [1] [a] [i] [providing that a taxpayer outside of the City of New York may apply for a correction of final assessment rolls, and that such proceeding must be commenced within 30 days of the date of the mailing of the notice of correction]). The respondents argue that to allow the petitioner to seek the correction of the subject tax assessment pursuant to Administrative Code § 11-206 would bypass the strict limitations period applicable to real property tax challenges. However, a remedy pursuant to Administrative Code § 11-206 is discretionary in nature and, thus, the petitioner's delay in seeking correction is one of the factors which the DOF would generally be entitled to consider in making a determination, along with any prejudice the DOF would incur if a correction were made. Whether these factors were actually articulated or relied upon as a basis for the DOF's determination here must, however, await the service and filing of the respondents' answer and the full administrative record.

We agree with the petitioner that the DOF's determination, at the very least, suggests that it misapprehended both the relief sought by the petitioner as well as its authority to grant the relief actually requested. Administrative Code § 11-206 vests the DOF with the discretion to correct tax assessments that are erroneous due to a clerical error or to an error of description; the DOF's authority is not limited to transcription errors or arithmetical errors. Moreover, contrary to the DOF's representation in the letter dated March 24, 2011, the authority to correct such an error pursuant to Administrative Code § 11-206 does not lie with the Tax Commissioner or the judiciary. Therefore, the Supreme Court erred in granting the respondents' motion pursuant to CPLR 3211 (a) (5) and (7) to dismiss the petition on the grounds that it fails to state a cause of action and that the proceeding was time-barred.

Our dissenting colleague agrees that a proceeding pursuant to RPTL article 7 is not the sole method by which a taxpayer may challenge a particular tax assessment, that in some situations a property owner in New York City can employ Administrative Code § 11-206 to challenge a tax assessment, that a request for administrative relief pursuant to that provision is not limited in time, and that this appeal turns on the definition of the terms "clerical error" and "error of description." The dissent, however, would hold that the allegedly mistaken classification of the property alleged in the petition is not a clerical error or an error in description and that, accordingly, the petition failed to state a cause of action alleging that the DOF's determination was arbitrary and capricious or was affected by an error of law. In arriving at this conclusion, the dissent undertakes a detailed examination of the legislative history of Administrative Code § 11-206 (see L 1915, ch 592) to discern how the undefined terms "clerical error" and "error of description" should be defined. The relevant legislative history does not indicate that the subject terms should be narrowly construed, thus undermining the dissent's view that the petitioner failed to state a cause of action.

Relying upon *People ex rel. Chamberlain v Forrest* (96 NY 544 [1884]), the dissent posits that, even if the DOF had made a clerical error with respect to the subject property, such an error could have been transformed into an "error in substance" which cannot be corrected pursuant to section 11-206 of the Administrative Code. *Forrest* is inapposite, in the first instance, because that case did not involve the subject Administrative Code provision and, second, because it involved an attempt by a taxing authority to correct a clerical error that was initially made in favor of the taxpayer, not the converse, as in the instant proceeding. *Forrest* related to the then-existing State Tax Law, pursuant to which the value of the taxpayer's personal property was erroneously entered by the assessors on the tax rolls as $4,000, but, without giving the taxpayer the required notice, the assessors tardily changed the assessment to accurately reflect that the taxpayer had $40,000 worth of taxable personal property. The Court of Appeals affirmed a judgment in favor of the taxpayer. Moreover, the Court of Appeals deemed the error at issue in *Forrest* to be more than a mere clerical error since it concerned the very substance and extent of the assessment. Accordingly, the Court of Appeals, based at least in part on due process concerns (see *id.* at 548-549), determined to shield the

taxpayer from the unfavorable consequences that would flow from a determination that the error was merely clerical in nature. Here, by contrast, the dissent suggests that even a bona fide clerical error can be used as a sword to prevent this petitioner from obtaining relief pursuant to Administrative Code § 11-206. We do not agree.

Accordingly, the respondents' pre-answer motion to dismiss the petition should have been denied and, under the circumstances presented here, the matter must be remitted to the Supreme Court, Queens County, to permit the respondents to submit an answer and file the complete administrative record (*see* CPLR 7804 [f]; *Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County*, 63 NY2d 100, 102 [1984] [where a pre-answer motion to dismiss a petition in CPLR article 78 proceeding is denied, the respondent shall be permitted to submit an answer "unless the facts are so fully presented in the papers of the respective parties that it is clear that no dispute as to the facts exists and no prejudice will result from the failure to require an answer"]; *Matter of Shepherd v Maddaloni*, 103 AD3d 901, 906 [2013]; *cf. Matter of Rizvi v New York Coll. of Osteopathic Medicine of N.Y. Inst. of Tech.*, 98 AD3d 1049, 1051 [2012]).

Accordingly, the order and judgment is reversed, on the law, the respondents' motion pursuant to CPLR 3211 (a) to dismiss the petition is denied, the petition is reinstated, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent herewith, and the respondents' time to answer the petition is extended until 20 days after service upon it of a copy of this opinion and order (*see* CPLR 7804 [f]).

BALKIN, J.P. (dissenting). I would hold, contrary to the majority, that the petition does not state a cause of action. In holding otherwise, my colleagues in the majority misconstrue section 11-206 of the Administrative Code of the City of New York and call into question the well-established procedure for challenging real property tax assessments in New York City. Accordingly, I respectfully dissent.

As the majority acknowledges, the petitioner was notified of the allegedly erroneous increase in his assessment in plenty of time to challenge it. As the majority also acknowledges, the petitioner did not utilize any of the available procedures to seek a correction in the 2008-2009 classification of its property before that tax year's assessment became final. As my colleagues also

acknowledge, the petitioner thus forfeited its right to challenge the assessment in court through an RPTL article 7 tax certiorari proceeding. Finally, the majority acknowledges that the time to commence an article 7 proceeding has, in any event, long passed.

Nonetheless, the majority points out that RPTL article 7 itself recognizes that a tax certiorari proceeding may not be a taxpayer's only way to challenge a particular tax assessment: "[a] proceeding to review an assessment of real property shall be brought as provided in this article *unless otherwise provided by law*" (RPTL 700 [1] [emphasis added]; *see Corporate Prop. Invs. v Board of Assessors of County of Nassau*, 153 AD2d 656, 660 [1989]).[1] I agree that, in some situations, an owner of real property in New York City may obtain relief through Administrative Code § 11-206, even without first having challenged the assessment under the New York City Charter and RPTL article 7, but those situations are far more limited than the majority concludes.

Administrative Code § 11-206, which is entitled "Power of the commissioner of finance to correct errors," provides:

> "The commissioner of finance may correct any assessment or tax *which is erroneous due to a clerical error or to an error of description contained in the several books of annual record of assessed valuations, or in the assessments-rolls.* If the taxes computed on such erroneous assessment have been paid, the commissioner of finance is authorized to refund or credit the difference between the taxes computed on the erroneous and corrected assessments" (emphasis added).

The disposition of this appeal turns on what is meant by the phrase "erroneous due to a clerical error or to an error of description." As the majority notes, there is no definition of "cleri-

---

1. For example, a claim that the property is exempt from taxation may be asserted in a CPLR article 78 proceeding (*see Hewlett Assoc. v City of New York*, 57 NY2d 356, 363-364 [1982]), as may a challenge addressed to the methodology of assessing several properties, rather than the particular assessment of a specific property (*see Matter of Woodland Estates, LLC v Soules*, 79 AD3d 942, 943 [2010]), and as may a challenge to the removal of a previously granted exemption (*see Corporate Prop. Invs. v Board of Assessors of County of Nassau*, 153 AD2d at 660-661). Moreover, in municipalities where RPTL article 5 is applicable, an application for the correction of errors may be made under its provisions (*see* RPTL 550 *et seq.*; *Matter of Level 3 Communications, LLC v DeBellis*, 72 AD3d 164, 174 [2010]).

cal error" or "error in description" in the New York City Administrative Code (*see e.g. Matter of Astoria Gas Turbine Power, LLC v Tax Commn. of City of N.Y.*, 14 AD3d 553, 557-558 [2005], *affd* 7 NY3d 451 [2006]). Nevertheless, as I discuss below, the text, context, and history of Administrative Code § 11-206, as well as public policy, support only a narrow reading.

In *Matter of Hermance v Ulster County* (71 NY 481 [1877]), the Court of Appeals interpreted a statute (L 1869, ch 855, as amended by L 1871, ch 695) that provided for correction of clerical errors in tax assessments by county boards of supervisors. The statute gave county boards of supervisors authority "to correct any manifest, clerical, or other error in any assessments or returns" (71 NY at 485). As to the meaning of "clerical errors," the Court explained: " '[c]lerical' errors are mentioned to distinguish them from, and exclude errors of substance, of judgment, or of law" (*id.* at 486; *see Matter of 9281 Shore Rd. Owners Corp. v Commissioner of Fin. of the City of N.Y.*, 39 Misc 3d 768, 770-771 [Sup Ct, Kings County 2013]; *cf.* Black's Law Dictionary 659 [10th ed 2014]). Clerical errors are generally limited to arithmetical mistakes such as duplicative entries or calculations (*see Matter of Town of Oxford v Chenango County Bd. of Supervisors*, 23 AD2d 951, 952 [1965]), or misstatements of the size of a parcel (*see Goff v Shultis*, 26 NY2d 240, 245-246 [1970]).

The meaning of "an error of description" is similarly narrow. As the majority recognizes, that term "generally refers to circumstances where a given description of real property is so vague or indefinite that it is impossible to ascertain how far the property boundaries extend, where the property is located, and whether the property belongs to the owner" (majority op at 36; *see* RPTL 502 [2]; 504 [6]; 555; *Goff v Shultis*, 26 NY2d at 244-245; *Blum v Nassau Purch. & Bldg. Corp.*, 256 NY 232, 234-235 [1931]; *McCoun v Pierpont*, 232 NY 66, 70 [1921]; *Matter of Siemer v Village Bd. of Vil. of Orchard Park*, 286 App Div 135, 137-138 [1955]).

Indeed, the New York City Administrative Code expressly states that the purpose of the "description" of a parcel of real property is to enable accurate identification of the parcel for tax purposes: "Assessment-rolls shall be so arranged with respect to number of columns and shall contain such entries as the commissioner of finance shall prescribe, *sufficient to identify the property assessed* and to show its total assessed valuation" (Administrative Code § 11-217 [emphasis added]; *see also* Ad-

ministrative Code § 11-203). Thus, an "error of description" in the context of real property taxation has a readily discernable meaning; it refers to errors relating to identification of the property, such as a mistaken lot designation or an error in the metes and bounds description of the subject property.

The history of Administrative Code § 11-206 confirms that that provision should be interpreted narrowly. The provision was introduced into New York City law in 1915 when the legislature added it, in slightly different form, to former section 897 of the Greater New York Charter (*see* L 1915, ch 592). Before the amendment, former Greater New York Charter § 897 authorized the board of taxes and assessments to remit or reduce taxes on personal or real property if those taxes were found to be excessive or erroneous. As to real property, however, remission or reduction of taxes could be made only within one year after the time to otherwise protest had passed (*see* L 1915, ch 592). Judge Cardozo wrote that the legislature's intent in adopting former Greater New York Charter § 897 "was plainly to give relief to taxpayers who have failed for some reason to make their complaints before the grievance day has passed" (*People ex rel. Wessell, Nickel & Gross v Craig*, 236 NY 100, 105 [1923]). Thus, before amendment, the provision was broad in scope but limited in time.

The 1915 amendment expressly eliminated that one-year limitation for challenges based on clerical errors or errors of description:

> "After the expiration of one year from the delivery of the books to the receiver of taxes, the comptroller, with the written approval of the board of taxes and assessments, may correct any erroneous assessment, or tax due to a clerical error, or to an error of description of any parcel of real estate, contained in the annual record of assessed valuations of real estate, and, if the taxes computed on said erroneous assessment have been paid, the comptroller is authorized to refund the difference between the taxes computed on the erroneous and the corrected assessments" (L 1915, ch 592).[2]

Given that the legislature eliminated the time limit only for cor-

---

**2.** To be sure, given its punctuation, the 1915 amendment could have been interpreted to authorize a refund after one year of *any* erroneous assessment or tax, but the courts firmly rejected that interpretation: "To so construe it would be a manifest absurdity in the light of the other sections under this

rection of assessments resulting from clerical errors and errors of description, but left in place the one-year time limit for all other errors, it is clear that the legislature did not intend for the amendment to be construed broadly. Otherwise, the legislature would merely have eliminated, for all types of errors, the one-year limit of the original provision (*cf. Matter of Hermance v Ulster County*, 71 NY at 486). The 1915 Greater New York Charter provision has been amended many times over the past century, including a recodification that moved the provision from the Greater New York Charter to the New York City Administrative Code. But the provision added in 1915, which is now codified as Administrative Code § 11-206, has been largely unchanged in text and has changed not at all in meaning. The right to seek relief is unlimited in time, but the relief available is narrow in scope, as it was always intended to be.

Additionally, public policy considerations support a restrictive interpretation of Administrative Code § 11-206. First, Administrative Code § 11-206 is a statute of "convenience," affording relief to taxpayers, such as the petitioner, who have neglected to utilize the available procedures to challenge assessments before the assessments become final. Neglect, however, should not be encouraged. As the Court of Appeals reasoned, in giving narrow scope to a similar provision:

> "Public policy requires that after taxpayers, those over whom and whose property the assessors have jurisdiction, have been heard, or have had an opportunity to be heard, and have not sought redress in the appropriate form for any supposed error, their mouths should be closed, and the judgment and action of the assessors treated as final. It certainly is against the public interest and policy to permit the taxes collected or paid to be the subject of perpetual litigation, at any time to suit the convenience of the taxpayer, after he has once been heard by the proper tribunal, or has waived the privilege of a hearing by not appearing" (*Matter of Hermance v Ulster County*, 71 NY at 488).

In this respect, it should be emphasized that, in addition to the

title" (*People ex rel. Harway Improvement Co. v Berry*, 139 Misc 614, 616 [1931], *affd for reasons stated below* 233 App Div 851, 852 [1931], *affd* 258 NY 590 [1932]; *see People ex rel. Wessell, Nickel & Gross v Craig*, 236 NY 100, 106 [1923]; McKinney's Cons Laws of NY, Book 1, Statutes § 253 at 417 [punctuation "is subordinate to the text, and is never allowed to control the plain meaning of the act"]).

petitioner simply ignoring that its property had been reclassified, the petitioner failed to notice that the property's market value contained on the 2008/2009 Notice of Property Value had increased to $1,497,000 from the 2007/2008 valuation of $153,000. The petitioner does not dispute that it received its "Notice of Property Value" for the 2008/2009 tax year in plenty of time to challenge the assessment, but that it simply failed to do so.

A second and related public policy reason for narrowly interpreting Administrative Code § 11-206 is that a broad reading could cause practical problems. When a taxpayer timely challenges an assessment, the assessing authority is able to inspect the property and determine the merit of the taxpayer's challenge. The passage of time may compromise that ability (*see Matter of Hermance v Ulster County*, 71 NY at 486). Accordingly, Administrative Code § 11-206, which contains no time limit, is ill-suited for the delayed correction of errors that require inspections; "[t]he complainant would have the public at great disadvantage in such a controversy" (*id.*).

These considerations lead me to conclude that Administrative Code § 11-206 does not apply to the petitioner's claim of error. The petitioner contends that its property was misclassified and that it should be reclassified. A claim addressed to classification is an error in substance, which must be timely challenged under the provisions of the New York City Charter (*see* NY City Charter § 163 [c]) and then in an RPTL article 7 proceeding. A claim of misclassification is not a claim of clerical error or misdescription and is not susceptible of correction under Administrative Code § 11-206.

In reaching this conclusion, I recognize that the alleged error in classification might have begun with what may be regarded as a clerical error. But, sometimes, even an error that begins as a clerk's error becomes an error in substance. For example, in *People ex rel. Chamberlain v Forrest* (96 NY 544 [1884]), a taxpayer possessed $40,000 in taxable personal property, but, through the inadvertence of the assessors, the value of that property was entered on the tax rolls as $4,000. The assessors recognized the mistake but did not correct it until the taxpayer's time to challenge it had almost expired; when the correction was made, the taxpayer was not given the required notice, and it failed to challenge the error. The assessors contended that they had merely corrected a clerical error, but the Court of Appeals disagreed: "It was much more than that, for it concerned

the very substance and extent of the assessment . . . . The error here, if clerical in its origin, was one which affected the substance of the assessment" (*id.* at 548-549).[3]

Here, while I assume for pleading purposes that the alleged misclassification may have occurred because someone in the New York City Department of Finance inadvertently checked the wrong box, rather than because someone there made a mistake in judgment, it simply does not matter how it happened. Regardless, the alleged error is properly considered, for challenge purposes, as a claim that the petitioner's parcel was misclassified. A claim of an error in classification is not cognizable under Administrative Code § 11-206.

In giving broad meaning to the terms "clerical error" and "error of description," the majority relies on precedent that is inapposite. After the majority first acknowledges that "error of description" in the context of real property tax assessment relates to limited flaws that affect the proper identification of the property at issue, it then discounts this appropriate limited meaning in favor of a broad definition. The majority states: "[h]owever, this is not the exclusive definition of what constitutes an error of description" (majority op at 37). In support, the majority relies on *Matter of Donald E. Axinn Cos. v Board of Assessors of County of Nassau* (85 NY2d 838 [1995]), in which a parcel of one acre was, as the Court of Appeals termed it, "erroneously described as four acres" (*id.* at 839). In my view, *Matter of Donald E. Axinn Cos.* is irrelevant to the disposition of this appeal. The disputed issue there was whether the acreage error fit within the RPTL 550 (3) (c) definition of an "error in essential fact." Under that statute, "error in essential fact" includes "an incorrect entry of acreage on the taxable portion of the assessment roll, or the tax roll, or both, which acreage was considered by the assessor in the valuation of the parcel and which resulted in an incorrect assessed valuation" (RPTL 550 [3] [c]). No one disputed that there had been an acreage error; the only question was whether it "was considered by the assessor in the valuation of the parcel and . . . resulted in an incorrect assessed valuation" (*id.*). The Court held: "The undisputed

---

3. The majority seeks to distinguish *People ex rel. Chamberlain v Forrest* on the ground that the taxing authority there sought to use the asserted "clerical" error as a sword, not a shield. The distinction is unconvincing. The importance of that case is in the Court's reasoning that what may have begun as a clerical error was properly characterized ultimately as an error in substance.

evidence . . . supported the trial court's conclusion that in this case the acreage error affected calculation of the assessment and the tax owed" (*Matter of Donald E. Axinn Cos. v Board of Assessors of County of Nassau*, 85 NY2d at 840). In other words, the issue before the Court of Appeals was the sufficiency of the evidence, not the meaning of RPTL 550 (3) (c), and certainly not the legal meaning of the phrase "error of description."

The majority seizes, however, on the Court's use, in *Matter of Donald E. Axinn Cos.*, of the phrase "erroneously described as four acres" as an example of how an "error of description" is not limited to identification of the parcel. I disagree that the Court's colloquial use of the word "described" in that case, in which the legal meaning of "described" or "description" was not at issue, has any relevance to determining the legal meaning of the phrase "error of description" as used in Administrative Code § 11-206.

The majority justifies its broad reading of Administrative Code § 11-206 on two grounds. First, the majority says: "accept-[ing] . . . the respondents' view that RPTL article 7 is the sole vehicle for challenging a real property tax assessment would render Administrative Code § 11-206 superfluous and meaningless . . . . Therefore, we reject the respondents' contention" (majority op at 38). The direct response to this assertion is that the majority has misread the respondents' contention. The respondents have asserted that RPTL article 7 is the sole *judicial* remedy for review of a real property tax assessment, not that it was the petitioner's sole remedy at all. The respondents do not deny that, in appropriate circumstances, a taxpayer may gain relief from a clerical error or error of description under Administrative Code § 11-206. Accordingly, the majority's assertion that a narrow reading of Administrative Code § 11-206 would render it "superfluous and meaningless" is unfounded.

The majority's second justification for a broad reading of Administrative Code § 11-206 rests upon its characterization of the petitioner's failure to timely challenge the assessment under the New York City Charter and RPTL article 7 as a mere "technicality." In so doing, the majority relies on precedent to the effect that a taxpayer's challenge to tax assessments should not be defeated by a "technicality." The precedent on which the majority relies, however, involved technical pleading defects in timely taxpayer challenges to assessments (*see Matter of Garth v Board of Assessment Review for Town of Richmond*, 13 NY3d

50

176 [2009]; *Matter of Great E. Mall v Condon*, 36 NY2d 544 [1975]). They did not involve taxpayers who had completely failed to challenge their assessments according to the law. Accordingly, that precedent does not support what the majority has done here: widening the narrow path of relief provided by Administrative Code § 11-206 into a broad new avenue of tax assessment review. Simply put, the petitioner's failure to challenge the classification of its property until years after the taxes were due and payable may not be excused as a mere "technicality."

If the petitioner is correct that its property was misclassified, it is liable for many times the tax that it should have owed. Were we vested with discretion here, I would likely exercise it to grant relief, despite the petitioner's failure to timely challenge the assessment before it became final. In, however, interpreting Administrative Code § 11-206 more broadly than was intended, the majority not only gives this petitioner an unauthorized second chance, but also muddles the previously clear procedure for challenging real property tax assessments in New York City.

Ordered that the order and judgment is reversed, on the law, with costs, the respondents' motion pursuant to CPLR 3211 (a) to dismiss the petition is denied, the petition is reinstated, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent herewith, and the respondents' time to answer the petition is extended until 20 days after service upon it of a copy of this opinion and order (*see* CPLR 7804 [f]).

ROMAN and MILLER, JJ., concur with LEVENTHAL, J.; BALKIN, J.P., dissents in a separate opinion.