■ In the Matter of MADISON COUNTY INDUSTRIAL DEVELOPMENT AGENCY et al., Appellants, v STATE OF NEW YORK AUTHORITIES BUDGET OFFICE et al., Respondents. [54 NYS3d 778]—

Egan Jr., J. Appeal from a judgment of the Supreme Court (Young, J.), entered April 5, 2016 in Albany County, which, among other things, dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondents refusing to recognize petitioner Madison Grant Facilitation Corporation as a subsidiary of petitioner Madison County Industrial Development Agency and requiring petitioner Madison Grant Facilitation Corporation to file separate budget, annual and audit reports.

In January 2013, petitioner Madison County Industrial Development Agency (hereinafter MCIDA), an industrial development agency (hereinafter IDA) formed pursuant to General Municipal Law article 18-A, was notified by the Empire State Development Corporation that it had been awarded a grant of up to $96,000 to assist Ciotti Enterprises in constructing and operating a new construction and demolition materials recycling facility. Attached to the notification letter was a standard form contract providing, in relevant part, that if Ciotti failed to complete the project or disposed of any equipment without approval, MCIDA would be required to repay some or all of the grant funds; additionally, if Ciotti transferred any machinery or equipment—paid for with grant funds—out of

state, MCIDA also would be subject to a penalty amounting to 50% of the grant funds. In an admitted effort to shield itself from liability arising out of its acceptance and use of such funds, MCIDA incorporated petitioner Madison Grant Facilitation Corporation (hereinafter Madison Grant) as a local development corporation (*see* Public Authorities Law § 2) pursuant to N-PCL 1411. Madison Grant was formed as a subsidiary of MCIDA—with MCIDA as Madison Grant's sole member.

By letter dated July 3, 2013, respondent State of New York Authorities Budget Office (hereinafter ABO) advised MCIDA that, as "a local authority," Madison Grant would be required to file an annual budget, a multi-year financial plan, an annual report, an annual independent audit and reports related to Madison Grant's procurement contracts and investments. In response, MCIDA asked that ABO treat Madison Grant as a subsidiary of MCIDA and permit the two entities to file consolidated financial reports. By letter dated August 9, 2013, ABO indicated that it would take MCIDA's request under advisement and indicated that Madison Grant's first annual report must be filed through the Public Authorities Report Information System (hereinafter PARIS) by March 31, 2014 and that its 2014 budget report had to be filed in PARIS by November 1, 2013. ABO advised that a definitive response would be forthcoming in advance of the foregoing deadlines and identified its two primary concerns relative to MCIDA's request—namely, whether IDAs were authorized to form subsidiaries in the first instance and, more to the point, whether permitting Madison Grant to file consolidated reports would "result in a loss of transparency and accountability" given that local development corporations were required to file certain information in PARIS regarding, among other things, grant and loan recipients that would only be captured if Madison Grant filed its own annual reports.

When the anticipated response from ABO was not forthcoming, MCIDA advised ABO, by letter dated March 13, 2015, that it had filed consolidated financial reports with Madison Grant. ABO, in turn, advised MCIDA by letter dated April 13, 2015 that it had secured a formal opinion from the Attorney General, who had concluded that the creation of Madison Grant as a subsidiary of MCIDA was not authorized. For that reason, ABO explained, it was viewing Madison Grant as "a local development corporation with [MCIDA] as its sole member," thereby subjecting Madison Grant to the reporting requirements set forth in the Public Authorities Law and compelling Madison Grant to file separate financial reports in PARIS.

Petitioners thereafter commenced this CPLR article 78 proceeding in August 2015 seeking, among other things, to annul ABO's determination and, more specifically, to obtain a directive that ABO recognize Madison Grant as an authorized subsidiary of MCIDA and permit the filing of consolidated financial reports. Respondents answered and raised objections in point of law—contending that the proceeding was untimely and that the petition failed to state a cause of action. Supreme Court, in a well-reasoned decision, thereafter dismissed petitioners' application—finding, among other things, that MCIDA lacked the statutory authority to form a subsidiary. Petitioners now appeal.

"Where, as here, petitioners challenge an administrative determination made where a hearing is not required, appellate review is limited to whether the determination lacks a rational basis and is, thus, arbitrary and capricious" (*Matter of Fuller v New York State Dept. of Health*, 127 AD3d 1447, 1448 [2015] [internal quotation marks, brackets, ellipsis and citations omitted]). An agency's determination will be deemed to be arbitrary and capricious, in turn, when such determination lacks a sound basis in reason or is reached without regard to the facts (*see id.* at 1448). If, however, the administrative determination under review "has a rational basis, it will be sustained, even if a different result would not be unreasonable," as it is not the role of this Court to "substitute [its] judgment for that of the agency responsible for making the determination" (*id.* [internal quotation marks and citations omitted]).

An IDA or agency (*see* General Municipal Law § 854 [1]) is "a corporate governmental agency, constituting a public benefit corporation" (General Municipal Law § 856 [2]). "As a creature of the Legislature, an agency is clothed with those powers expressly conferred by its authorizing statute, as well as those required by necessary implication" (*Matter of Acevedo v New York State Dept. of Motor Vehs.*, 29 NY3d 202, 221 [2017] [internal quotation marks and citation omitted]; *see Abiele Contr. v New York City School Constr. Auth.*, 91 NY2d 1, 10 [1997]; *Matter of Flynn v State Ethics Commn., Dept. of State, State of N.Y.*, 87 NY2d 199, 202 [1995]). The purpose of an IDA is to, among other things, "promote, develop, encourage and assist in the acquiring, constructing, reconstructing, improving, maintaining, equipping and furnishing industrial, manufacturing, warehousing, commercial, research and recreation facilities" (General Municipal Law § 858). To that end, IDAs such as MCIDA are granted 17 express powers, including—insofar as is relevant here—the power "[t]o accept gifts, grants, loans

. . . or contributions . . . and to use any such [funds] for any of its corporate purposes" (General Municipal Law § 858 [11]), as well as the power "[t]o do all things necessary or convenient to carry out its purposes and exercise the powers expressly given in [General Municipal Law article 18-A]" (General Municipal Law § 858 [17]). As there is no question that the enabling legislation fails to expressly vest IDAs with the authority to form a subsidiary (*see* General Municipal Law § 858 [1]-[16]), MCIDA's authority to do so, if any, must be found within the "necessary or convenient" clause set forth in General Municipal Law § 858 (17).

With respect to the breadth of the power conferred by General Municipal Law § 858 (17), we are guided by the general principles of statutory construction. "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" (*Matter of Westchester Lib. Sys. v King*, 141 AD3d 172, 175 [2016] [internal quotation marks, ellipsis and citations omitted]; *see Matter of Gandin v Unified Ct. Sys. of State of N.Y.*, 135 AD3d 755, 756-757 [2016], *lv denied* 27 NY3d 906 [2016]; *Matter of Better World Real Estate Group v New York City Dept. of Fin.*, 122 AD3d 27, 35 [2014]). Although we deem the present controversy to present a question of pure statutory interpretation—requiring us "to give effect to the expressed will of the Legislature and the plain and obvious meaning of [the] statute" (*Matter of Anonymous v Molik*, 141 AD3d 162, 166-167 [2016] [internal quotation marks and citation omitted], *lv granted* 29 NY3d 902 [2017]; *see Matter of Gandin v Unified Ct. Sys. of State of N.Y.*, 135 AD3d at 757)—and acknowledge that opinions rendered by the Attorney General are not binding upon this Court (*see Matter of American Tel. & Tel. Co. v State Tax Commn.*, 61 NY2d 393, 404 [1984]; *Matter of Stoffer v Department of Pub. Safety of the Town of Huntington*, 77 AD3d 305, 313 [2010]; *Matter of Nelson v New York State Civ. Serv. Commn.*, 96 AD2d 132, 134 [1983], *affd* 63 NY2d 802 [1984]), we nonetheless agree with respondents' interpretation of the "necessary or convenient" clause set forth in General Municipal Law § 858 (17).

"All parts of a statute must be harmonized with each other

as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof" (McKinney's Cons Laws of NY, Book 1, Statutes § 98; *see Matter of Till v Apex Rehabilitation*, 144 AD3d 1231, 1232-1233 [2016], *lv denied* 29 NY3d 909 [2017]). Consistent therewith, we should avoid "constru-[ing] one portion of [a] statute in such a manner as to render another portion thereof meaningless" (*Matter of R.A. Bronson, Inc. v Franklin Correctional Facility*, 255 AD2d 723, 724 [1998]). As noted previously, General Municipal Law § 858 (17) vests IDAs such as MCIDA with the power "[t]o do all things necessary or convenient to carry out its purposes and exercise the powers expressly given in [General Municipal Law article 18-A]" (General Municipal Law § 858 [17]). Contrary to petitioners' assertion, it was not "necessary" for MCIDA to create a subsidiary in the form of Madison Grant in order to exercise its statutory power to accept grants. MCIDA indeed may have wished to establish a subsidiary—or what effectively amounts to a shell corporation—in an effort to insulate itself from liability, but it is clear from a reading of the statute that MCIDA was not required to do so.*

Similarly, while it may well be "convenient" for MCIDA to hide behind a separate entity—reaping all of the benefits to be derived from receiving grant funds while incurring none of the responsibilities or liabilities associated therewith—we do not read the statute as bestowing upon MCIDA the sweeping and essentially unlimited authority to do absolutely anything that it alone deems to be convenient for purposes of exercising its otherwise limited statutory powers. Stated another way, the "necessary or convenient" language set forth in General Municipal Law § 858 (17) must be read in conjunction with the express, detailed and specifically enumerated powers otherwise set forth in General Municipal Law § 858 (1)-(16), and nowhere in the cited subdivisions is any reference made to the authority to form a subsidiary. For that reason, we conclude that the specific authority to "accept gifts, grants, loans . . . or contribu-

---

* Notably, Madison Grant was formed as a "local development corporation" (N-PCL 1411; *see* Public Authorities Law § 2) and, according to ABO's acting director, could have accepted grant funds in that form without being a subsidiary. Although the parties do not devote significant discussion to this topic, one of the salient distinctions between local development corporations and subsidiaries appears to be the reporting requirements to which each is subject. According to the record, local development corporations and the IDAs that sponsor them must file separate reports, while subsidiaries are permitted, in certain limited circumstances, to file consolidated reports with the parent IDA.

tions . . . and to use any such [funds] for any of its corporate purposes" (General Municipal Law § 858 [11]) combined with "the general exhortation to do all that is necessary or convenient [to carry out that purpose] does not create [the] authority" to form a subsidiary (*Abiele Contr. v New York City School Constr. Auth.*, 91 NY2d at 11; *compare Matter of Citizens For An Orderly Energy Policy v Cuomo*, 78 NY2d 398, 412 [1991] [authorizing legislation conferred broad authority, flexibility and discretion upon power authority to implement statutory purpose]; *Matter of Hanover Sand & Gravel v New York State Thruway Auth.*, 65 AD2d 860, 861 [1978] [authority vested with "otherwise unrestricted discretion 'to make contracts . . . and to execute all instruments necessary or convenient' to carry out its purposes"]; *Civil Serv. Forum v New York City Tr. Auth.*, 4 AD2d 117, 123-124 [1957] [broadly worded enabling legislation conferred substantial general power upon the authority in question], *affd* 4 NY2d 866 [1958]). Indeed, adopting the construction urged by petitioners, i.e., that General Municipal Law § 858 (17) permits an IDA to do anything that arguably could be construed as "convenient" in order to, among other things, accept grant funds, would effectively eviscerate or otherwise render meaningless the specific powers detailed in the remaining subdivisions—a result that the Legislature surely did not intend.

Having concluded that MCIDA was not statutorily authorized to create Madison Grant as a subsidiary in the first instance, we need not consider whether Madison Grant should be permitted to file consolidated reports with its parent IDA. Similarly, while the parties debate whether the statutory prohibition against state authorities (*see* Public Authorities Law § 2 [1]) creating subsidiaries (*see* Public Authorities Law § 2827-a [1], [5]) lends credence to petitioners' or respondents' construction of General Municipal Law § 858, this issue need not detain us, as we are satisfied that the "necessary or convenient" clause embodied in General Municipal Law § 858 (17) does not vest MCIDA with the authority to form a subsidiary by implication. Petitioners' remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

McCarthy, J.P., Rose, Devine and Mulvey, JJ., concur. Ordered that the judgment is affirmed, without costs.